UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
UNITED STATES OF AMERICA,            )
                                                    )
v.                                                  )            15-cr-10323-IT
                                                    )
DANIEL GIBSON and MARK KESNER,  )
                                                    )
            Defendants.                         )
_____)

### GOVERNMENT'S OPPOSITION TO DEFENDANT MARK KESNER'S MOTION TO DISMISS INDICTMENT BASED ON VINDICTIVE PROSECUTION OR, IN THE ALTERNATIVE, FOR DISCOVERY AND EVIDENTIARY HEARING

Defendant Mark Kesner seeks the rarely granted relief of pretrial dismissal of charges against him, alleging that they were brought vindictively.  He cannot support this accusation because there was no vindictiveness.  Mr. Kesner does not claim any pre-existing personal animus towards him by anyone involved in the case because none existed.  Rather, Mr. Kesner claims that his commonplace assertion that he would not testify before the grand jury without being immunized somehow engendered the government's animus.  But interview statements the government obtained before Mr. Kesner's immunity request evidenced that false bookkeeping entries which enabled tax evasion by his co-defendant were made at Mr. Kesner's direction. Accordingly, the government ultimately obtained immunized testimony from Mr. Kesner's subordinate, and not Mr. Kesner.

After multiple levels of supervisory analysis and review both within the U.S. Attorney's Office ("USAO") and the Tax Division of the U.S. Department of Justice, the facts in this case were presented to a grand jury for indictment.  Mr. Kesner has met neither his burden of establishing through objective evidence that the government acted with genuine animus towards him, nor his burden of establishing that he would not have been prosecuted but for that animus.

I.      BACKGROUND

This case stems from an IRS inquiry into false tax returns prepared by Mr. Kesner and his

accounting firm and filed by co-defendant Daniel Gibson and his law firm.  After an initial

period of interviews and record analysis conducted independently by the Internal Revenue

Service, the matter was referred to the Department of Justice and the USAO began a grand jury

investigation in this district.  (*See, e.g,.* Declaration of Joshua L. Solomon, ECF No. 35 ("Decl.")

Exhs. A and N-T (early administrative summons and interview reports and later grand jury

subpoena).)[1]

During the IRS's initial investigation, both Mr. Kesner and a more junior accountant who

assisted him with the Gibson account – Meradee Jowder – answered questions for agents. (*See*

Decl. Exhs. A and O-P (memoranda of interview with Mr. Kesner and Ms. Jowder,

respectively).)  On March 25, 2015,[2] the USAO similarly sought their testimony before the grand

jury on April 16, 2015. (*See* Decl. Ex. C (Mr. Kesner's grand jury subpoena).)  Both stated that

they would not testify unless they first received immunity.  (*See* Decl. ¶ 11.)

On April 1, 2015, in response to Mr. Kesner's and Ms. Jowder's requests for immunity

the government sent their attorney – the two were represented by the same attorney – the

standard proffer letter used in this district.[3] (Decl. Ex. D, p.2.)   The next day, April 2, 2015 –

_____

[1] The government cites Mr. Solomon's Declaration for a number of uncontested facts in this
Opposition.  By doing so, the government does not adopt other statements made by Mr. Solomon
either in the Declaration or attachments to it.

[2] The subpoenas dated March 24, 2015, were served the next day, March 25, 2015.

[3] It is common practice in this and other districts around the country for the government to
request that a witness "proffer."   Prosecutors can grant immunity or reach a plea bargain for a
reduced sentence in exchange for cooperation. Before agreeing to immunity or a reduced
sentence, however, prosecutors need to assess what a witness will say and how credible a
witness's testimony will be.   A witness's personal proffer of his/her testimony beforehand

two weeks before his subpoena called for him to appear before the grand jury – the government

informed Mr. Kesner through his counsel that his conduct was actively under investigation.[4]

(Decl. Ex. D, p.1).  As reiterated explicitly in an e-mail to Mr. Kesner's counsel on April 2,

2015:

> As you are aware, whether Mr. Kesner facilitated, participated in,
> encouraged or conspired with Mr. Gibson to file false tax returns is
> an open question in our investigation.

(*Id.*)  Indeed, from the very beginning of April, 2015, government counsel expressed concern

whether the same attorney could provide conflict-free counsel to both Mr. Kesner and Ms.

Jowder, who could provide material evidence against Mr. Kesner.  (*Id.*) The risk would be

particularly high if Mr. Kesner was paying the attorney to provide counsel to a potential witness

against him.  (*Id.*)  Mr. Kesner remained a possible subject in the investigation between this e-

mail exchange in the beginning of April, 2015 and the ultimate decision that the facts supported

seeking an indictment in October, 2015.

    Neither Mr. Kesner nor Ms. Jowder was willing to proffer under the protection of the

District's standard proffer agreement.  (Decl. ¶ 12.)  This required the USAO to decide whether

to immunize Mr. Kesner and/or Ms. Jowder without the opportunity for an Assistant U.S.

Attorney to talk personally with either beforehand to further assess what they would say under

---

makes this possible.  To deal with the Fifth Amendment issue raised by a proffer session, the
government typically enters into a letter agreement with a potential witness pursuant to which the
government agrees not to use statements made by the witness during the proffer session directly
against the witness, so long as the witness does not lie.  These practices are commonly known.
*See, e.g.,* Peter J. Henning, *Maneuvering for an Immunity Deal*, N.Y. Times, March 29, 2012,
http://dealbook.nytimes.com/2012/03/29/maneuvering-for-an-immunity-deal/?_r=0.

[4] The subpoena served on Mr. Kesner attached the "Advice of Rights" customarily appended to
all grand jury subpoenas served on any "target" or "subject" of an investigation.  (Decl. Ex. C,
p.5 (Advice of Rights).)

oath or assess their credibility as potential witnesses. The decision was made to seek immunity initially for the more junior Ms. Jowder and not Mr. Kesner, who dealt personally with Mr. Gibson and directed suspect end-of-the-year changes to income reported to the IRS. (Decl. Ex. F (Jowder Imm. Order) and Ex. P., ¶¶ 13, 15 and 16 (where Ms. Jowder states that any discussions with Mr. Gibson would have been through Mr. Kesner and that she would not have reduced ledgers recording taxable professional fees received by Gibson's law firm between $675,000 and $1,200,000 in 2005, 2006, 2008, and 2009 unless instructed to do so by Mr. Kesner).)

The decision to indict Mr. Kesner and Mr. Gibson in October, 2015 followed multiple supervisory reviews of both facts developed during the course of the investigation and proposed charges based on those facts. Before an indictment can be sought by a prosecutor in this district, the indictment and the evidence supporting it must be reviewed and approved at a minimum by a unit chief or deputy chief and by the Criminal Division chief or deputy chief. This case was no exception. In addition, tax cases must be independently reviewed by attorneys in the Tax Division. U.S. Attorney's Manual ("USAM") § 6-4.218. Again, this case was no exception.

Charging Counts 1 and 3 of the Indictment would have been barred by 26 U.S.C. § 6531 (the statute of limitations) after the first part of November, 2015. While the final analysis whether to charge those counts or potentially to immunize was ongoing, government counsel gave Mr. Kesner's counsel notice on October 2, 2015 that he was going to subpoena Mr. Kesner to the grand jury on October 21, 2015, ensuring their availability if the decision was made to immunize Mr. Kesner. Mr. Kesner was not, in fact, subpoenaed at this time.[5] After careful analysis of the facts, and supervisory consultation and review both within the U.S. Attorney's

---

[5] Mr. Kesner's statement at page 7 of his Memorandum that he was subpoenaed "again" is inaccurate.

Office and the Tax Division, the government concluded that there was sufficient evidence to

present the case against Mr. Kesner to the grand jury.

II.   <u>KESNER HAS NOT ESTABLISHED THROUGH CLEAR, OBJECTIVE
      EVIDENCE IN THIS CASE THAT THE GOVERNMENT ACTED WITH
      GENUINE ANIMUS TOWARDS HIM AND THAT HE WOULD NOT HAVE
      BEEN PROSECUTED BUT FOR THAT ANIMUS</u>

Mr. Kesner was explicitly informed in April, 2015 – six months before he was indicted –

that his conduct was also under investigation.  There was no significance to October 2-8, nor any

sudden change in his treatment during that time, as Mr. Kesner tries to suggest.  It is typical for

the government to give particularly focused attention and analysis to a case in the weeks

immediately before an indictment, when the government must determine which of a group of

people involved in related criminal conduct should be charged.

The government did not act punitively when defense counsel asserted Mr. Kesner's and

Ms. Jowder's Fifth Amendment rights before the grand jury in April.   Indeed, the record

demonstrates that the government was willing to seek immunity where merited in the

investigation.  The government sought immunity for one of counsel's clients. It just did not do so

for the responsible one.

Further, the case underwent the same multi-level, supervisory review that all tax cases do

before they are charged, providing assurance and protection that the case was merited by the

facts and the law and consistent with policies intended to achieve uniform, broad, and balanced

tax enforcement. *See* USAM 6-4.010 (imposing Tax Division oversight and describing its

purpose).[6]

---

[6] *United States v. Aaron Swartz,* 11-CR-10260-NMG, has no factual or legal connection with this
case.

5

Federal courts presume that prosecutors act in good faith. *See United States v. Peterson*, 233 F.3d 101, 105 (1st Cir. 2000) ("We presume that the prosecutor acted in good faith, and did not prosecute in a vindictive manner.") (*citing United States v. Bassford*, 812 F.2d 1, 19 (1st Cir. 1987)).  *See also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties" (internal quotation marks omitted)); *United States v. Serafino*, 281 F.3d 327, 331 (1st Cir. 2002) ("the government is presumed to have exercised its prosecutorial responsibilities in good faith"); *United States v. Dwyer*, 287 F. Supp. 2d 82, 86 (D. Mass. 2003) (a prosecutor's decision to indict is "presumed legitimate") (*quoting United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000)).

Of course, prosecutorial discretion is not without limits.  A prosecutor's use of the charging process may violate due process if it penalizes the exercise of specific constitutional or statutory rights.  *See United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997).  To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that: (1) the prosecutor acted with genuine animus toward the defendant; and, (2) the defendant would not have been prosecuted but for that animus. *See United States v. Goodwin*, 457 U.S. 368, 380 n.12 (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion").  Prosecutorial vindictiveness can be shown in one of two ways.  First, the presumption of good faith can be overcome if the defendant shows "actual vindictiveness." *See, e.g., Willhauck v. Halpin*, 953 F.2d 689, 711 (1st Cir. 1991) (suggesting a definition of "actual vindictiveness" as a "vindictive purpose motivating the prosecutors").  Second, in the absence of such evidence, claimants who demonstrate a "realistic likelihood of vindictiveness," are entitled to a "rebuttable presumption" of vindictiveness. *See*

*Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974).  *See also Stokes,* 124 F.3d at 45 ("It is hornbook law that a federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness sufficient to establish a due process violation, or even if he demonstrates a likelihood of vindictiveness sufficient to justify a presumption.").  However, such a presumption can be overcome by objective evidence that the decision to prosecute was properly motivated.  *See, e.g., United States v. Marrapese*, 826 F.2d 145, 149-50 (1st Cir. 1987) (prosecutor's explanation of changed circumstances sufficiently objective to overcome presumption); *United States v. King*, 126 F.3d 394, 399-400 (2d Cir. 1997) (presumption of vindictiveness rebutted because government strategized and sought to increase likelihood that at least one of the defendants would be convicted).

A case of actual vindictiveness requires direct evidence that the prosecutor's motive in making a charging decision was to punish a defendant for the exercise of a statutory or constitutional right.  *See United States v. Johnson*, 221 F.3d 83, 94 (2d Cir. 2000) (to find "actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case'") (*quoting United States v. Goodwin*, 457 U.S. 368, 380-81 (1982)).  This is an exceedingly rare and difficult standard for a defendant to meet. *See Willhauck v. Halpin*, 953 F.2d at 711 (no proof of actual vindictiveness when prosecutors in two counties both brought charges against defendant resulting from car chase); *United States v. Brown*, 217 F.3d 247, 257 (5th Cir. 2000) (defendant failed to show genuine prosecutorial animus when federal authorities investigated him in alleged retaliation for lawsuit filed against local police); *United States v. Wade*, 266 F.3d 574, 585 (6th Cir. 2001) (no actual vindictiveness because prosecutor increasing charges had no personal stake, and defendant committed additional crimes after initial indictment issued).

With regard to the "realistic likelihood of vindictiveness" cases (warranting a rebuttable presumption), the federal courts have consistently held that, to the extent that the presumption of vindictiveness is even available in the pretrial context, it should only rarely be applied. *See, e.g.*, *Stokes*, 124 F.3d 39 at 45 ("courts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings"); *United States v. Koh*, 199 F.3d 632, 639-40 (2d Cir. 1999) (presumption of vindictiveness generally does not arise in pretrial setting); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) (presumption of vindictiveness rarely applied to pre-trial prosecutorial decisions); *United States v. Spears*, 159 F.3d 1081, 1086 (7th Cir. 1998) (in the pretrial context, defendant "must present objective evidence showing genuine prosecutorial vindictiveness").[7]

Justification for these rigorous standards comes from the settled importance of prosecutorial discretion and separation of powers, and concomitant recognition by the courts that charging decisions are the province of the executive branch, subject only to specific constitutional restraints. Hence, Mr. Kesner's desire to inquire into charging decisions absent any evidence of wrongdoing is wholly without merit. *See Armstrong*, 517 U.S. at 464 (separation of powers requires broad prosecutorial discretion); *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the

---

[7] Generally, the circumstances in which federal courts have applied the presumption of vindictiveness have been when a defendant is re-indicted, particularly when a prosecutor has increased the number or severity of charges for the same offense, after the defendant has appealed his conviction. *E.g., Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974) (Due Process Clause prohibits a prosecutor from bringing a more serious charge against a defendant who has pursued a statutory right of appeal from a conviction on a lesser charge for the same offense).

courts are competent to undertake."); *Carranza v. INS*, 277 F.3d 65, 72 (1st Cir. 2002) (noting a

general proscription against judicial review of any aspect of prosecutorial deliberations).

III.   <u>KESNER HAS NOT OVERCOME THE BARRIERS TO INTRUSIVE
       DISCOVERY BASED ON CLAIMS OF VINDICTIVE PROSECUTION</u>

In view of the foregoing, it is unsurprising that federal courts have imposed significant

barriers to discovery in vindictive prosecution cases.  The Second Circuit has explained the

rationale for these barriers, admonishing courts to tread carefully in permitting discovery in

vindictive prosecution cases because doing so "delays the criminal proceeding, threatens to chill

law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry,

and may undermine prosecutorial effectiveness by revealing the Government's enforcement

policy." *Sanders*, 211 F.3d at 717 (quoting *Armstrong*, 517 U.S. at 465).

In *Dwyer*, the district court noted that the Supreme Court has not addressed the legal

standard for obtaining discovery in relation to a vindictive prosecution claim.  *Dwyer*, 287 F.

Supp. 2d at 87.  The *Dwyer* court noted, however, that the Supreme Court has addressed the

standard for discovery in selective prosecution cases and that several Circuit Courts have applied

an analogous standard to vindictive prosecution cases.  *See id.* at 87-88.

Based on these cases, the *Dwyer* court embraced the following standard for allowing

discovery in vindictive prosecution cases, at least in the post-indictment context: "[B]efore a

court allows a defendant to have discovery on the government's prosecutorial decisions, the

defendant must overcome a significant barrier by advancing *objective evidence tending to show

the existence of prosecutorial misconduct*." *Id.* at 88, quoting *United States v. Wilson*, 262 F.3d

305, 315 (4th Cir.2001), citing *Armstrong*, 517 U.S. at 468 (emphasis added).  *See also Bucci*,

582 F.3d 108, 113-114 (1st Cir. 2009) (affirming decision of district court precluding discovery

in the absence of objective evidence of vindictiveness); *Sanders*, 211 F.3d at 717 (characterizing

as "rigorous" standard requiring defendant to "provide some evidence tending to show the existence of the essential elements of the defense").[8]   *See generally United States v. Sutherland*, 929 F.2d 765, 772 n.2 (1st Cir. 1991) (conclusory allegations are insufficient when the record lacks any competent evidence of vindictiveness).

Application of these principles here shows that there is no objective evidence of vindictiveness towards Mr. Kesner (nor any "relative likelihood of vindictiveness") and thus no basis on which to compel the extremely unusual and intrusive discovery he now seeks. Investigation of a case consists not only of collecting numerous statements and volumes of data, but also of analyzing their content and import. This process very often takes months in a federal investigation and sometimes years.  There is therefore nothing extraordinary about the amount of time between the USAO's initial immersion in the case and the indictment against Mr. Kesner. *See Goodwin*, 457 U.S. at 381 ("There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting.  In the course of

---

[8] Although the *Dwyer* court permitted limited discovery on a vindictive prosecution defense, it noted that this was because (1) the defendant had presented a unique set of circumstances and (2) the government had "scant evidence" on which to base the defendant's indictment, assuming defense counsel's description of those facts to be accurate. *See Dwyer*, 287 F. Supp. 2d at 90. The uncontested objective evidence which suggested the potential of misconduct in *Dwyer* is simply not present here: (1) government counsel never questioned whether Mr. Kesner had a basis for asking for immunity; (2) Mr. Kesner was never required to appear personally before the grand jury once he insisted on being immunized before testifying; (3) because Mr. Kesner was not required to assert his claim of privilege before the grand jury there was no consequent obligation to instruct the grand jury concerning his appearance; and (4) six months, not six days, passed between his requesting immunity and his being charged alongside Mr. Gibson.  *Contrast Dwyer*, 287 F. Supp.2d at 89 (summarizing the evidence which the court found "tipped slightly" in favor of the likelihood of vindictiveness). Further, even the record attached to Mr. Kesner's own motion reflects his material involvement in altering Mr. Gibson's firm's (and thus Mr. Gibson's) reported income. (*See, e.g.*, Decl. Ex. P., ¶¶ 13, 15 and 16 (where Ms. Jowder states that any discussions with Mr. Gibson would have been through Mr. Kesner and that she would not have reduced ledgers recording taxable professional fees received by Gibson's law firm between $675,000 and $1,200,000 in 2005, 2006, 2008, and 2009 unless instructed to do so by Mr. Kesner).)

preparing a case for trial, the prosecutor…simply may come to realize that information possessed by the State has a broader significance").  Further, there is no evidence alleged, much less objectively established, that the Department of Justice as an institution targeted Mr. Kesner.

IV.    Conclusion

Because the record in this case contains no objective evidence whatsoever that Mr. Kesner was prosecuted to punish him for insisting on immunity before testifying in the grand jury, Mr. Kesner's motion must be denied. *See also United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir.2002) (actual vindictiveness claim is "exceedingly difficult" to make because it requires objective evidence that prosecutor's actions were designed to punish defendant for asserting legal rights).

Respectfully Submitted,

CARMEN M. ORTIZ
United States Attorney

*Cynthia A. Young*
By:    CYNTHIA A. YOUNG
Chief, Criminal Division

*Stephen P. Heymann*
STEPHEN P. HEYMANN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, January 13, 2015, I electronically filed the above Opposition using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*Stephen P. Heymann*
STEPHEN P. HEYMANN
Assistant U.S. Attorney