UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
UNITED STATES OF AMERICA          )
                                              )
        v.                                    )          Criminal No. 1:15-cr-10323-IT
                                              )
(1) DANIEL P. GIBSON, and          )
(2) MARK KESNER                      )          **ORAL ARGUMENT REQUESTED**
                Defendants              )
_____)

**SCOTT BEHMAN AND BEHMAN HAMBELTON LLP'S OBJECTION TO THE
MAGISTRATE JUDGE'S ORDER REQUIRING THE GOVERNMENT TO PRODUCE
ATTORNEY-CLIENT PRIVILEGED MATERIAL AND CONFIDENTIAL CLIENT
INFORMATION TO DEFENDANTS MARK KESNER AND DANIEL GIBSON**

Scott Behman ("Behman") and Behman Hambelton LLP ("BH") object to the Magistrate

Judge's Order granting Defendant Daniel Gibson's Motion to Compel the government to

produce portions of a law firm server containing attorney-client privileged documents and

confidential client information for use in defense of charges they conspired to evade taxes. Order

(dkt. #74). The government mirror imaged the server in order to preserve forensic images of

documents produced pursuant to a grand jury subpoena pursuant to an agreement with BH. That

agreement prohibited the government from accessing any documents on the server without first

providing the documents to BH's counsel for a privilege review.

The Order should be reversed because: 1) the Order is contrary to binding Supreme Court

precedent because it permits the Defendants to have unfettered access to privileged and

confidential information and improperly narrows the attorney-client privilege; 2) the Order

contravenes the government's agreement with BH; 3) the Order fails to preserve client

confidentiality and the attorney-client privilege held by Gibson Behman, P.C. clients ("GB") and

Behman; and 4) the Defendants have made no showing and the Magistrate Judge has not found

that the information on the server is exculpatory or material to the defense, and even if such a

1

showing was made, the Defendants are not entitled to use privileged information in defense of this case and the government is not entitled to use privileged information in prosecution of this case.

Accordingly, the Order should be modified to require the government to constitute a taint team to remove privileged and confidential client information prior to the server being produced.

## Background

### Gibson's Fraud and The Dissolution of Gibson Behman P.C.

This case arises out of a massive fraud committed by Gibson, who victimized his former law firm, Gibson Behman, P.C. ("GB") and former law partner, Behman, by embezzling over $6 million in law firm and client funds. Gibson, who has been indefinitely suspended from the practice of law, embezzled the funds with the assistance of his co-defendant, Kesner, by booking the withdrawals from the firm as shareholder loans and then writing off those loans against the gross receipts of the firm. In this manner, Gibson was able to steal firm funds tax free.

After Behman discovered that Gibson was under investigation by the Board of Bar Overseers for stealing client funds, he retained undersigned counsel on March 9, 2011 and obtained a restraining order removing Gibson from the management of the firm.

Shortly thereafter, Gibson resigned from the firm. GB dissolved effective June 30, 2011 and Behman formed a new firm, Behman Hambelton LLP. Because a majority of GB's clients followed Behman to his new firm, GB's electronic client files, including privileged communications and confidential client information, migrated to BH's computer server.

**The Civil Litigation**

In the wake of GB's dissolution, Behman and GB sued Gibson and Kesner. During the course of that litigation, thousands of pages of documents related to GB's finances were produced to the parties. Gibson separately requested copies of his email box as well as the email boxes of two employees, Dawn Garrity and Nancy Jones. Those email boxes were produced to Gibson. BH is not seeking to shield any materials produced during the civil discovery from discovery in this case to the extent those materials reside on the server mirror imaged by the government.[1] All of the civil litigation was settled in February 2015.

**The Grand Jury Investigation and BH Grand Jury Subpoena**

In connection with the grand jury investigation that led to the indictment of the Defendants, the government issued a grand jury subpoena to BH requiring the firm to produce documents related to the financial transactions of Gibson and GB. The subpoena explicitly excluded bills to clients. *See* Grand Jury Subpoena dated June 12, 2015, attached hereto as Exhibit A.

Because Gibson's counsel had indicated to the government that he intended to challenge the authenticity of GB documents in the event of a trial, the government requested that it be allowed to "mirror image" the BH server in order preserve forensically sound electronic images of the documents produced in response to the grand jury subpoena.

To accommodate the government's request while preserving the attorney-client privilege between GB and BH and its clients as well as Behman and his counsel, the government and BH entered into an agreement setting forth a protocol for preserving the attorney client privilege. *See* Letter from AUSA Heymann dated June 24, 2015, attached hereto as Exhibit B. The agreement permitted the government to mirror image the BH server to "segregate documents and records

---

[1] The statement is required by the Court's Order on Defendant Daniel Gibson's Motion to Compel, Defendant Mark Kesner's Motion to Compel and the Joint Motion for a Protective Order. (dkt # 74) at 4-5.

which pertain to financial matters pertinent to the ongoing grand jury investigation from those which (1) are not pertinent or (2) may involve legal advice to clients." *Id*. The government agreed to use analytic software to create file lists, "to electronically exclude privileged materials[,]" and the government would not examine the content of any document contained on the server until BH's counsel had an opportunity to review and confirm the documents identified by the government were non-privileged and responsive to the grand jury subpoena. *Id*.

The government mirror imaged a portion of the BH server containing documents, provided counsel with documents responsive to the search and counsel produced those documents that were not privileged and responsive to the grand jury subpoena. The government did not mirror image the portion of the BH server containing firm emails.

### The Indictment and Gibson's Motion to Compel

On October 28, 2015, a grand jury returned an indictment charging Gibson with conspiring to defraud the United States and filing a false tax return. Indictment (dkt. #1). Kesner, who prepared Gibson & Behman's tax returns and financial statements, was also charged with conspiring to defraud the United States and assisting with the preparation of a false tax return. *Id*. The relevant time period set forth in the indictment is 2005 through 2010.

Gibson filed a discovery motion under Rule 16 seeking to compel the government to produce a copy of the BH server arguing that the government possessed the server and thus he was entitled to a copy of the entire server to prepare his defense. (dkt. # 42). Kesner joined Gibson's motion. (dkt. #43). In his motion, Gibson claimed that the "server contain[ed] a wide array of documents, electronic communications and client files to which access is pivotal to his defense." Gibson did not articulate how or why these unidentified documents are relevant or

material to the defense.[2] Nor did Gibson point to any legal authority that would permit him to use confidential client information or privileged client communications in defense of this case.

## BH's Appearance In The Case

The parties filed their First Interim Status Report on January 29, 2016 indicating that Gibson had requested a copy of the server and that the government did not object to providing the server as long as it was granted equal access. (dkt. # 38). Notwithstanding its agreement with BH, the government did not object to Gibson being provided full access to any files on the server conditioned on the government having equal access. (dkt. #38) at 2; (dkt. #42) at 3.

The government provided a copy of the status report to BH's counsel and invited counsel to attend the next status conference to be heard on the issue. The Magistrate Judge permitted BH to appear and lodge an objection to Gibson's motion to compel.[3] BH argued that the government lacked control over the server, that the server contained attorney-client privileged documents not subject to disclosure and that Gibson was not entitled to use attorney-client information or confidential client information to defend against the charges. (dkt. #48). BH also obtained an advisory opinion from the Massachusetts Bar Association Committee on Professional Ethics confirming that "[p]roducing all the records of the [ ] law firm would put confidentiality of numerous client records in jeopardy, and it seems unlikely that [the] Attorney needs access to all the records to defend against the criminal charges." Behman's Opposition (dkt. #68-1).

---

[2] Gibson also claimed that email folders belonging to him, Behman, Dawn Garrity and Nancy Jones were in the government's possession and should be produced. As noted, the government did not mirror image the portion of the BH server containing emails and, at any rate, email folders belonging to Gibson, Garrity and Jones were produced to Gibson in the civil litigation.

[3] As a practical matter, Judge Cabell allowed BH to intervene in this case, although the court did not enter an order to that effect. Out of an abundance of caution, BH has move separately to intervene in the case.

**The Joint Motion For A Protective Order**

The parties, including BH, submitted additional pleadings and the court held two hearings on the matter. At one of the hearings, the Magistrate Judge suggested that the government should review the contents of the server and produce those documents that fall within the scope of Rule 16 discovery. The government declined indicating that the only way for it to comply with its Rule 16 discovery obligations was to produce the entire server.

In advance of the third hearing held on June 8, 2016, the government prepared an encrypted hard drive containing three files. One file contained all of the documents from the server that were created or modified on or before March 9, 2011, the date that Behman and GB retained undersigned counsel. Because GB was a law firm, that folder necessarily contains client files containing privileged materials and confidential client information related to GB's representation of its clients.

The second folder contained documents that were created or modified between March 9, 2011 and June 11, 2011, an arbitrary time period agreed to between defense counsel and the government. This file also contains privileged materials and confidential client information related to GB's representation of clients as well as potentially privileged materials and confidential client information related to undersigned counsel's representation of Behman and GB in connection with the civil litigation with Gibson.

The third file is a sub-set of the second file containing documents responsive to search terms provided by BH's counsel to the government to identify potentially privileged documents created by BH's counsel during the course of the civil litigation with Gibson. According to the

government, the third folder contained "less than a thousand documents" including documents containing the name of Behman's counsel and other attorneys that worked at his counsel's firm.[4]

Despite its initial opposition to Gibson's motion to compel on the basis that it was not in possession, custody and control of the server, (dkt. #67), the government abandoned this argument and jointly moved with the defendants for a protective order that would allow all three folders to be produced to the Defendants, including the potentially privileged documents related to counsel's representation of Behman and GB in the civil litigation with Gibson (dkt. #46).[5]

The Magistrate Judge entered a protective order requiring the government to produce the three folders it created, containing confidential client and privileged information, to defense counsel to be used in prosecuting and defending the case. (dkt. # 75) at ¶ 1. The Magistrate Judge held that the server was in the government's possession and ordered the server copy[6] be disclosed to the defendants "consistent with [the government's] discovery obligations [to] turn over all information in its possession, custody, or control." Order (dkt. #74) at 3-4. The Magistrate Judge also found that the government and BH had come to an agreement, which "gave BH ultimate control over determining whether [server] material was responsive or privileged." *Id*. at 2. Yet the Order required the production of the three folders containing client files and potentially privileged documents involving the civil litigation with Gibson, albeit with a provision "to address BH's interest in having some due process protections with respect to the potential use or disclosure of privileged material." *Id*. at 4.

---

[4] Undersigned counsel requested that the government provide a copy of the third folder containing potentially privileged documents related to Behman's civil litigation with Gibson. The government refused to provide counsel with a copy of this folder.

[5] The government's position is at odds with its obligations under its agreement with BH which precludes the government from reviewing any documents on the server without first providing the documents to BH's counsel for a privilege review.

[6] The server copy did not include email communications, thus those documents are outside the scope of the Order.

The Order permits both the defendants and the government to use and reproduce privileged information on the server in prosecuting and defending the case, including disclosing the information to those assisting counsel on the matter, potential witnesses and experts, and court personnel. Protective Order (dkt. #75) at ¶¶ 2-4. BH is limited to having an opportunity to assert a privilege objection only when a party identifies documents as containing privileged information and intends to place it in the public record. The Order does not otherwise restrict the use of privileged and confidential client information in connection with the case. *Id.* at ¶¶ 6-7.[7]

### Standard of Review

A district court may designate a magistrate judge to hear and determine non-dispositive matters pending before the Court. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); *United States v. Bokhari,* 2015 WL 730353, at * 3 (D. Mass. November 19, 2015). After a magistrate judge issues an order, the parties may object and the district judge "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." *Id.* The district judge reviews those sections of the order to which a timely objection has been made *de novo* and unopposed portions of the order are reviewed for plan error. *Id.*

### I.      Privileged Information on the Server Is Protected From Disclosure Under Binding Supreme Court Precedent

The law prohibits courts from eroding the attorney-client privilege by applying a balancing test to determine whether a client's confidences to its attorneys are more worthy of protection than the disputes presented by the litigants before it. In *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), the Supreme Court reversed the DC Circuit's decision permitting an Independent Counsel to subpoena an attorney's handwritten notes of a client meeting for a criminal investigation. *Id*. at 401-411. In doing so, the Court held that there is "no case authority

---

[7] This production may lead to the absurd result where the government or defense counsel could use privileged information to cross examine witnesses at trial because the parties are only required to disclose documents containing privileged information to BH prior to placing the documents in the public record.

for the proposition that the privilege applies differently in criminal and civil cases" and "rejected use of a balancing test in defining the contours of the [attorney-client] privilege." *Id*. at 409. The Court also refused to narrow the scope of the attorney-client privilege, which is "one of the oldest recognized privileges in the law" and affirmed the vitality of withholding privileged materials even in criminal cases, because to do otherwise would "introduce[ ] substantial uncertainty into the privilege's application." *Id*. at 409-10.

The Order impermissibly narrows the protections afforded to the attorney-client privilege by requiring the disclosure of client files absent a waiver. Order (dkt. #74); Protective Order (dkt. #75). The Magistrate Judge effectively balanced the clients' interest in maintaining the privilege with the Defendants' right to access to privilege information and concluded that the Defendants' right to access trumped the privilege so as long as "*some* due process protections with respect to potential use or disclosure of privileged material remained." Order (dkt. #74) at 4 (emphasis added). The Supreme Court has explicitly rejected the balancing approach applied by the Magistrate Judge in defining the contours of the attorney client privilege. *Swindler & Berlin,* 524 U.S. at 409.

The assumption that a criminal defendant has a right to use privileged materials to defend against criminal charges is plainly wrong. Even a criminal defendant's right to present every available defense is not 'absolute,' *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982), and 'may in appropriate cases bow to accommodate other legitimate interests,' *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). Indeed, the Supreme Court has explicitly held that a defendant 'does not have an unfettered right to offer testimony that is incompetent, *privileged*, or otherwise inadmissible under standard rules of evidence.' *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (emphasis added).

Courts have routinely applied this precedent to preclude a defendant from forcing disclosure of attorney-client privileged matters. For example, in *United States v. Wells Fargo, N.A.*, 132 F. Supp. 3d 558 (S.D.N.Y. 2015), the court concluded that under binding Supreme Court precedent, the corporation's attorney-client privilege trumped the employee defendant's right to present an advice of counsel defense. *Id.* at 559; *see also SEC v. Present*, 14-cv-14692, Order (dkt. #59) (D. Mass. 2015) (Sorokin, D.J.) (granting motion to quash defendant's subpoena for attorney-client materials, because of "the undisputed application of the unwaived privilege, the Supreme Court's rejection of balancing considerations, … [and] the consequences of permitting the subpoenas to proceed"); *Valdez v. Winans*, 738 F.2d 1087, 1089 (10th Cir. 1984) (prohibiting defendant from introducing evidence subject to the attorney-client privilege did not violate the constitution noting that "the Sixth Amendment usually has been forced to yield when a testimonial privilege is asserted"); *Revels v. Diguglielmo*, 03-5412, 2005 WL 1677951, *9 n.9 (E.D. Pa. July 18, 2005) (under federal law it does not impede a defendant's right to present a defense by precluding utilizing privileged attorney-client communications).

Courts have imposed this burden equally precluding the government too from utilizing privileged attorney-client communications in its prosecutions. In *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 961 (3d Cir. 1984), the Third Circuit affirmed the lower court's directive that the government return a law firm's records that were seized in executing a warrant. *Id.* at 961. There the government failed to take any steps to minimize the privilege's invasion and instead engaged in "a rampant trampling of attorney-client privilege and … work product doctrine" regardless of whether the firm's records were relevant to the participants or charges. *Id.*

Here, the Defendants have no right to use privileged information to defend against the charged conduct. The Order contravenes binding Supreme Court precedent by impermissibly narrowing the attorney-client privilege by forcing the disclosure of privileged materials. The

10

attorney-client privilege cannot be pierced by the Court, nor can the Court control how these disclosures are disseminated after the fact. *Wells Fargo*, 132 F. Supp. 3d at 564-65 (once privileged material is disclosed the damage is done and there is no guarantee that other courts would adhere to the limits of any attempt to prescribe the disclosure's scope).

## II.     The Order Allows the Government to Contravene Its Agreement With Behman Hambelton LLP

The also Order contravenes First Circuit precedent by excusing the government's compliance with its agreement with BH. The government was allowed to mirror image the server on the condition that it not access the content of the server without first providing the documents to BH's counsel for a privilege review. The purpose of the agreement was specifically to preserve the attorney client privilege held by GB's clients and Behman. The Order, however, allows the government and the Defendants to access the server, including privileged information, for use in the prosecution and the defense of this case and effectively nullifies the parties' agreement. First Circuit "case law prohibits not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them." *United States v. Frazier*, 340 F.3d 5, 10 (1st Cir. 2003) (internal quotations and citations omitted).

The government never had the right to access privileged information on the server. Attachment B (agreeing to segregate documents that may involve legal advice to clients and "an effort will be made to electronically exclude privileged materials"). Nor could the government have such a right in light of the longstanding principle that the grand jury's right to every man's evidence is limited by persons protected by a cognizable privilege such as the attorney-client privilege. *In re Grand Jury Matters*, 751 F.2d 13, 17 (1st Cir. 1984). Permitting the government to renege on its agreement deprives GB's clients and Behman from asserting their valid privilege objections and limits any objections until *after* disclosure occurs.

11

If the government did not agree to the protocol set forth in the agreement, but instead advanced its current position that the entirety of every document on the law firm's server should be disclosed, BH would never had allowed the government to image the server. Despite the Order finding BH negotiated an agreement that vested exclusive control of the information with itself, the Order nevertheless denies BH *any* control over privileged materials. Order (dkt. # 74) at 2; Attachment B.

The law provides BH with a right to expect its agreement with the government will be honored and it will have an opportunity to protect its privileged materials. The Order contradicts these protections by failing to afford either.

## III.     The Protective Order Fails to Preserve Client Confidentiality or the Attorney-Client Privilege

The Order does nothing to protect the attorney-client privilege or confidential client information belonging to GB's clients who have nothing to do with the conduct alleged in this case or Behman's privilege. "The general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production thorough a subpoena or court order." *In re Grand Jury Subpoena (Zerendow)*, 925 F. Supp. 849, 853 (D. Mass. 1995) (Saris, J.) (quotations and citation omitted). The Order does not require the government or the Defendants to identify categories of information that has any plausible relationship to the case. Instead, the Order allows the government and the Defendants to review privileged information to determine what may or may not be relevant to the prosecution or defense.

The Order is also contrary to the strongly rooted common law protection of the attorney-client privilege. The Order permits GB or its clients to object to the use of the privilege materials only before the Defendants or government place the materials on the public record. (dkt. # 75) at

¶ 6. The provision misapprehends the confidentiality attendant in the attorney-client relationship and wrongly assumes that "confidentiality" is preserved so long as the materials are not placed in the public record. *See* Protective Order (dkt. #75) at ¶ 6. Under First Circuit precedent, disclosure of privileged materials to a third party waives the privilege by destroying the confidentiality upon which the privilege rested, thus a provision that prevents the privileged materials from being placed in the public record is not sufficient to preserve the privilege. *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (disclosure of privileged information to a third party destroys confidentiality and "privilege evaporates the moment that confidentiality ceases to exist").

Once the privileged materials are disclosed to third parties, including prospective witnesses and anyone else that the parties deem necessary for the prosecution or defense of this matter, GB, Behman and law firm clients whose materials are on that server will face an insurmountable burden of establishing that the privilege and confidentiality has not been waived in the face of the disclosures to unidentified persons and the parties' claims to the contrary.[8]

Indeed BH's counsel sought an opinion from the Massachusetts Bar Association Committee on Professional Ethics regarding disclosure of attorney client communications and confidential client information in this context. That opinion advised BH to object to the wholesale production of clients' records because "[p]roducing all the records of the [ ] law firm would put the confidentiality of numerous client records in jeopardy, and it seems unlikely that

---

[8] The Order cites to evidentiary Rule 502(d) as authority that the Court can order no waiver despite the disclosure. Proposed Protective Order (dkt. #67-1) at ¶ 7. The advisory committee notes, however, explain that Rule 502(d) relates to enforcing clawback provisions, not a license to expand common law principles on the scope of the privilege. While principles of comity and courtesy may support other courts abiding by this Court's order that no waiver occurred, it is not "absolute, and courts asked to issue discovery orders in litigation pending before them also have not shied away from doing so, even when it would modify or circumvent a discovery order by another court, if under the circumstances, such a result was considered justified." *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499-500 (D. Md. 2000).

Attorney [ ] needs access to all the records to defend against the criminal charges." MBA Committee on Professional Ethics Advisory Opinion, attached hereto as Exhibit C.

Here, the parties have not demonstrated a need for *the entire* law firm server and their request violates clients' attorney-client privilege by permitting the parties to reveal and/or reproduce the materials as the parties found necessary in prosecuting or defending this case.

**IV.  The Order Should Be Modified To Require the Government To Use a Taint Team To Remove Privileged Information From The Server Prior to Production To Defendants**

The Court ordered the government to comply with its Rule 16 discovery obligations. In response, the government and Defendants proposed an order, adopted by the Magistrate Judge, which allowed the government and Defendants access to tens of thousands of client files and privileged information to use as the parties see fit. In order to preserve these privileges, the Court should modify the Order to require the government to constitute a taint team to review the materials on the server for privilege. The use of a taint team is the preferred method for the government to review privileged materials to comply with its Rule 16 discovery obligations and preserve the attorney-client privilege held by the law firm's clients. *United States v. Stewart*, 2002 WL 1300059 (S.D.N.Y. June 11, 2002) (considering whether materials likely to contain privileged materials, including a law firm hard drive, should undergo a usual taint team review or be performed by a Special Master). In the event that the taint team identifies any relevant documents on the law firm server it shall either produce the materials to the parties forthwith or, if the relevant material may be privileged or confidential, provide the materials to counsel for B&H to allow for the appropriate objections to be lodged.

**Conclusion**

For the foregoing reasons Behman and BH's objects to the Magistrate Judge's Order directing the server be disclosed and its attendant Protective Order and respectfully requests that

14

the Order be modified to require the government to remove the privileged materials prior to

production of the server to the Defendants.

Dated: June 17, 2016

                                  Respectfully submitted,

                                  */s/ William J. Lovett*
                                  William J. Lovett (BBO No. 643525)
                                  wlovett@collorallp.com
                                  **COLLORA LLP**
                                  100 High Street, 20th Floor
                                  Boston, Massachusetts 02110
                                  (617) 371-1000

## REQUEST FOR ORAL ARGUMENT

      Pursuant to Local Rule 7.1(d), Behman and Behman Hambleton LLP respectfully request that the Court schedule oral argument to assist the Court in deciding the issues presented.

                                    */s/ William J. Lovett*
                                  William J. Lovett

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 17, 2016.

                                    */s/ William J. Lovett*
                                  William J. Lovett