# Exhibit A

Case 1:15-cr-10323-IT Document 90-1 Filed 06/24/16 Page 1 of 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>(1) DANIEL P. GIBSON, and )<br>(2) MARK KESNER )<br>       Defendants ) | Criminal No. 1:15-cr-10323-IT |

**SCOTT BEHMAN AND BEHMAN HAMBELTON LLP'S REPLY TO DEFENDANTS' JOINT OPPOSITION TO BEHMAN AND BEHMAN HAMBELTON LLP'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER**

Scott Behman ("Behman") and Behman Hambelton LLP ("BH") submit this reply to respond to the Defendants' argument, raised for the first time on appeal that the attorney-client privilege held by Behman and Gibson Behman ("GB") clients was waived when the government mirror imaged the server in order to preserve forensic copies of documents produced pursuant to a grand jury subpoena.

Judge Cabell did not find that there was a waiver of the attorney-client privilege. In fact, Judge Cabell found that the protocol agreed to by the government "allowed BH to fully respond to the grand jury subpoena without disclosing non-responsive or privileged materials, and notably gave BH ultimate control over determining whether material was responsive or privileged." (dkt # 74) at 2. Indeed, the Defendants' opposition to BH's objection goes to great pains to argue that Judge Cabell's order "allows the parties to review the evidence . . . while protecting any attorney-client privileged materials . . . from further disclosure to the public." (dkt. # 89) at 13.

**Argument**

**Judge Cabell Did Not Find that The Attorney-Client Privilege Was Waived.**

In their opposition, the Defendants claim that the attorney-client privilege belonging to GB's clients and Behman was waived. Defendants cite to no finding made by Judge Cabell to support this claim. *See* (dkt. #89) at 5-8. In fact, the Defendants adopt a contrary position arguing that the Order protects the attorney-client privilege. *Id.* at 8.

Judge Cabell's Order did not find a waiver, but explicitly recognized that the contents of the server were privileged and found a protective order was necessary to address BH's interest in "some due process protections with respect to the potential use or disclosure of *privileged* material." (dkt.#74) at 4 (emphasis added). Moreover, Judge Cabell held that the protocol agreed to by the government "allowed BH to fully respond to the grand jury subpoena without disclosing non-responsive or privileged materials, and notably gave BH ultimate control over determining whether material was responsive or privileged." *Id.* at 2. Under these circumstances, where there was a conscious attempt on the part of BH and the government to avoid divulging privileged materials, there was no waiver. *Cf. Neelon v. Krueger,* 12-cv-11198 (dkt. #352) at 12 (D. Mass. July 14, 2015) (Cabell, M.J.) *aff'd* (dkt. #373) (Talwani, D.J.) (no privilege waiver where the statements do not disclose the contents of privileged communications and reflect a conscious intent to avoid divulging communications believed to be privileged).

The Defendants seek to buttress the Order by claiming a waiver of attorney-client privilege occurred, but this is patently specious as they acknowledge the Order preserves the privilege. *Cf.* (dkt. #88) at 6 ("Behman has voluntarily waived privilege and other protections in regards to the files defendants are seeking access") *with* (dkt. #88) at 8 ("The Order provides for two levels of protection to ensure … no privilege or confidences are waived.").

The Defendants do not cite to any support for their contrary assertion that Judge Cabell found a waiver. *See* (dkt. #88) at 5-7. Instead they list a sleuth of alleged facts, without any citation to the record, to claim that a waiver occurred. *Id.* These claims include the fact that GB client files migrated with the client to a BH following GB's dissolution and disclosing unrelated documents not at issue in the motion to compel[1] constituted a waiver of attorney-client privilege. *Id.* at 6-7. These arguments stand in stark contrast to the arguments advanced by the Defendants below and in the proposed protective orders drafted by the Defendants. *See* (dkt. #42-2) at ¶ 6 ("[n]either defendant Mark Kesner nor the Government shall have access to Gibson & Behman PC client files to avoid breaching the Attorney-Client Privilege and Work-Product Doctrine); (dkt. #67-1) at ¶ 6 ("No Party shall place in the public record ... any document which may contain confidential or privileged information....").

Moreover, in stark contrast to their waiver argument advanced to this Court, the Defendants repeatedly represented to Judge Cabell that they would respect the attorney-client privileged materials on the server. *See e.g.*, (dkt. #42) at ¶ 5(i) (recognizing the attorney-client privilege and work product protection over the clients, but claiming a protective order would ensure the privilege's vitality); (dkt. #51) at ¶ 4 (defendant Gibson would abide by his confidentiality responsibilities in reviewing the Server); ¶ 3 (the privilege should not supersede the defendant's discovery rights, not that the privilege was nonexistent).[2]

---

[1] The server does not include these email communications. (dkt. #74) at n.1. Thus, the defendants attempt to use disclosure of separate, unrelated emails to effectuate a waiver of attorney-client privilege in other documents, such as client files necessarily fails.

[2] Because Defendants failed to present their waiver argument to Judge Cabell, that argument is waived for the purposes of this appeal. *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988) ("A party has a duty to put its best foot forward before the magistrate: to spell out its arguments squarely and distinctly. One should not be allowed to defeat the system by seeding the record with mysterious references to unpled claims, hoping to set the stage for an ambush should the ensuing ruling fail to suit. Given plaintiff's obfuscation, the district court's finding that the theory was not adequately placed in issue before the magistrate was eminently supportable."); *see also Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 209-11 (D.N.J. 1997) (district court would not permit consideration of issues not raised before Magistrate on nondispositive

In short, Judge Cabell never found that BH waived any privilege, nor could BH waive the privilege because the privileged belonged to the clients, not the law firm. Defendants' attempts to imply waiver underscores the clear error in the Order – compelling production of countless individuals' privileged materials to "see if the constitutional issue [with the defendant's Sixth Amendment rights] is in fact real" is a red herring. (dkt. #88) at 8 & n.8. Even if the privileged materials are relevant,[3] the Defendants are not entitled to use these materials in defense of this case. (dkt. # 79) at 8-11.

## Conclusion

There was no waiver of the attorney-client privilege in the contents of the law firm's server, nor did Judge Cabell make such a finding. Thus, for the reasons set forth above and in BH's Objection (dkt. #79), the Order should be set aside.

Dated: June 24, 2016

Respectfully submitted,

/s/ *William J. Lovett*
William J. Lovett (BBO No. 643525)
wlovett@collorallp.com
**COLLORA LLP**
100 High Street, 20th Floor
Boston, Massachusetts 02110
(617) 371-1000

---

motion (collecting cases)); *Luvata Buffalo, Inc. v. Lombard Gen. Ins. Co. of Canada*, No. 08-CV-00034(A)(M), 2010 WL 826583, at *11 (W.D.N.Y. Mar. 4, 2010*), report and recommendation adopted sub nom. Luvata Buffalo, Inc. v. AIG Europe, S.A.*, No. 08-CV-0034A, 2010 WL 1292301 (W.D.N.Y. Mar. 29, 2010) ("district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance).

[3] Defendants take great pains to try and explain the relevance of the privilege material to their defense claiming that despite the fact that Gibson was the 2/3 owner of G&B, he originated more than 2/3 of the cases and more than 2/3 of the proceeds of the firm and thus was justified in receiving more than 2/3 of the firm's proceeds. (dkt. # 89) at 11. Even if these facts are true, they bear no relevance to the issue in this case – whether Gibson paid tax on the proceeds he took from the firm.