UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:15-cr-10323-IT-2 |
| MARK KESNER, | * | |
| | * | |
| Defendant. | * | |

ORDER

March 21, 2017

TALWANI, D.J.

Pending before the court is a Motion by Defendant Mark Kesner to Dismiss Indictment Based on Vindictive Prosecution or, in the Alternative, for Discovery and Evidentiary Hearing [#33], the Magistrate Judge's Report and Recommendation [#112] recommending that the motion be denied, Kesner's Objection to the Report and Recommendation [#113], and a Motion by Defendant Mark Kesner to Strike Material in Support of Government's Response to Objection to Report and Recommendation [#121]. After *de novo* review, the court ALLOWS Kesner's motion to strike and strikes the Declaration of Cynthia A. Young [#119-1], ACCEPTS and ADOPTS the Report and Recommendation with further discussion set forth below, and DENIES Kesner's motion to dismiss.

I. Motion to Strike

The Declaration of Cynthia A. Young [#119-1], filed by the government in support of its response to Kesner's Objection, was not before the Magistrate Judge. Rule 3(c) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts allows a district judge making a *de novo* determination of those portions of a

1

magistrate judge's recommended disposition to which specific written objection has been made to consider "additional evidence." But the Rule also explicitly provides that the district judge "may consider the record developed before the magistrate judge, making a determination on the basis of that record." The court declines to consider evidence the government did not provide to the Magistrate Judge.

II. <u>Kesner's Disagreement with, and Additions to, the Magistrate Judge's Statement of Facts</u>

The relevant background is set forth in the Report and Recommendation and is adopted. The court adds the following discussion in response to Kesner's objections:

*A. The Investigation Prior to the Involvement of the United States Attorney's Office*

For purposes of the motion to dismiss, the Magistrate Judge reported that the IRS began an investigation in May 2012 and that Kesner's counsel was repeatedly advised that the investigation centered on Daniel Gibson's alleged criminal conduct, that Kesner was viewed only as a witness, and that the agent's practice was to provide an advice of rights to any individual suspected of having engaged in criminal activity. Kesner devotes several pages to these matters but does not disagree with, or add alternatives to, these findings.

    1. The Claimed Reaffirmation of Kesner's Status as a Witness in Spring 2015

Kesner asserts that the actions and statements of the Assistant United States Attorney after the IRS presented the case to the U.S. Attorney's Office constituted a "reaffirm[ation]" of Kesner's status as a witness. The inferences that Kesner asks the court to draw to reach this conclusion are discussed below. As to the underlying facts, however, Kesner points to little disagreement with the Magistrate Judge's report but does include a few additional facts.

Kesner asserts first that the March 2015 grand jury subpoena that required his appearance "was not accompanied by a target letter or any other warning that one would expect if Mr.

Kesner were a target." The subpoena served on Kesner does not identify any individual as the target of the investigation, though it does identify documents sought as those relating to Daniel Gibson's loans and Gibson and Behmann, P.C.'s tax returns. And while there was no target letter with the subpoena, there was an advice of rights, as the Magistrate Judge reported, that stated that the grand jury was conducting a criminal investigation into possible violations of criminal law in violation of 26 U.S.C. § 7206. The advice of rights specifically noted that anything said "may be used against you by the grand jury or in a subsequent legal proceeding." Section 7206(2) includes willfully *advising the preparation* of false tax returns.

Kesner asserts that the Assistant United States Attorney stated shortly thereafter that he did not see any conflict with Kesner's counsel jointly representing Kesner and two others. The Magistrate Judge accepted Kesner's counsel's representation concerning this conversation for purposes of this motion, as does this court.

As the Magistrate Judge reported, when counsel stated in that same conversation that both Kesner and Jowder would invoke their Fifth Amendment rights against self-incrimination, the Assistant United States Attorney stated he saw no basis for *Jowder* to invoke the Fifth Amendment given his understanding of the facts. The court notes that the Assistant United States Attorney did not make a similar statement as to Kesner.

Kesner's attorney's response included the following: "Your last [e-mail], while perhaps sent in a hasty manner, appears inconsistent with what I have been led to understand. The language in the email appears close to target language, but I assume deliberately used the phrase 'open question' so as not to go quite that far." The record includes no suggestion that the government responded one way or the other to counsel's e-mail or that the government expressed

any disagreement with counsel's understanding that Kesner was by this point at least "close to [a] target."

Kesner's counsel reports that at some point the Assistant United States Attorney expressly told him that Kesner need not appear as originally subpoenaed given his stated intention to invoke his Fifth Amendment rights.

Kesner points to April 2015 investigation memoranda about meetings to discuss information that Daniel Gibson's law partner, law firm administrator, and law firm office manager might have about Daniel Gibson's alleged criminal tax deficiencies and notes that the memoranda name the investigation "DANIEL PETER GIBSON."

Kesner asserts that in following months, the government treated Kesner as a witness. But the only evidence in the record that might shed light on Kesner's status between May and September is that by May 2015, the United States Attorney's Office had obtained an immunity order for Jowder, but not Kesner.

2. The Claimed Reaffirmation of Kesner's Status as a Witness on October 2, 2015

Kesner relies heavily on the next communication to his counsel from the Assistant United States Attorney—an October 2, 2015, e-mail with the subject line "accept service." It states in its entirety: "I am going to be subpoenaing your client, Mr. Kesner, to the grand jury on Wednesday October 21st. The date, I am afraid, is inflexible. Will you accept service on his behalf?" No actual subpoena (with or without adequate warnings) was served.

Kesner underscores that he tried repeatedly and unsuccessfully to contact the Assistant United States Attorney after receiving this e-mail. The record does not include the content of any messages left for the Assistant United States Attorney. The e-mails sent by counsel regarding

4

this subpoena and an anticipated subpoena on Kesner's accounting firm also state little except that counsel sought to discuss the subpoena.

3. The Decision to Indict Kesner and Further Evidence in the Record

Kesner does not disagree with the Magistrate Judge's report on the Assistant United States Attorney's advising counsel on October 8, 2015, that Kesner was a target.[1]

III. The Applicable Standards

Kesner asserts that the Report and Recommendation applies an "impossibly high standard" for triggering the presumption of vindictiveness which would shift the burden to the government. He offers no contrary legal authority, however, and acknowledges as he must that the Supreme Court has found that, "[g]iven the severity of such a presumption," the presumption is found "only in cases in which a reasonable likelihood of vindictiveness exists." (Quoting United States v. Goodwin, 457 U.S. 368, 373 (1982)). And although Kesner ignores the Magistrate Judge's caution that courts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial states, that caution is clearly required. United States v. Stokes, 124 F.3d 39, 45 (1st Cir. 1997); see also United States v. Bucci 582 F.3d 108, 112 (1st Cir. 2009) ("It is difficult to make such a showing pretrial, however, in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith.")

---

[1] Kesner adds that the government arrested him on his way to work without the Assistant United States Attorney returning counsel's call or allowing a voluntary surrender. That the United States Attorney's Office arrests a defendant in public rather than allowing the individual to turn himself in may be unnecessary and may contribute to the public's loss of confidence in the fairness of government institutions. It does not, however, tend to show vindictiveness for asserting Fifth Amendment rights.

Kesner also objects that the Report and Recommendation failed to recognize the lower hurdle for obtaining discovery. But the hurdle—though lower—is not non-existent. "In light of the presumption that a prosecutor has acted in good faith in exercising his discretion to make charging decisions, . . . a defendant seeking discovery [must] first come forth with 'some' objective evidence tending to show the existence of prosecutorial vindictiveness." Bucci, 582 F.3d at 113.

IV. Discussion

Kesner's argument for a presumption of vindictiveness focuses on the alleged abrupt reclassification of Kesner from being only a witness to becoming a target. But the objective evidence does not support the inferences Kesner seeks to draw or the "abrupt change" from witness to target and fails even to "tend to show" the existence of prosecutorial vindictiveness needed for discovery.

The evidence in the record does suggest that the investigation was focused primarily on Daniel Gibson. Indeed, as Kesner points out, even after Gibson was indicted, an investigation memorandum concerning a meeting to discuss information that Daniel Gibson's landlord might have about Daniel Gibson's alleged criminal tax deficiencies, still named the investigation "DANIEL PETER GIBSON." But that an investigation was focused primarily on one individual does not preclude charges against other individuals whose alleged criminal conduct comes to light during the investigation. Accordingly, the name assigned and the primary focus of the investigation is of little relevance. Moreover, the court cannot infer from the fact that the initial subpoena included only an advisement of rights and not a target letter that the government had determined in March 2015 that Kesner would serve as a witness only. Instead, in light of the

broad discretion afforded the prosecutor, the initial subpoena is equally consistent with Kesner being an open question, under some suspicion to the prosecutors, or even close to being a target.

Kesner implies that the Assistant United States Attorney's statement that he saw no conflict in counsel representing both Kesner and Jowder is tantamount to an assertion that Kesner was free from suspicion at the time. But it is equally or more likely that any such statement by the Assistant United States Attorney was made because he had not yet thought through any potential conflict (either because he simply had spent no time thinking about the issue when Kesner's counsel first stated that he was representing both Kesner or Jowder or because he had not yet contemplated the potential conflict that apparently became evident to him once Jowder—who he viewed as not under suspicion—was advised to assert a right against self-incrimination).

Kesner argues that the only thing that had changed between the "no conflict" call and the "growing concerned" e-mail was his clients' asserting that *their* Fifth Amendment rights were implicated. But the imprecision of this argument hides its flaw. Kesner's counsel had long asserted Fifth Amendment rights on Kesner's behalf, so the assertion of those rights was not new. And when Kesner's counsel asked the Assistant United States Attorney to articulate a basis for fearing that a conflict may exist, the Assistant United States Attorney promptly informed Kesner's attorney that there was an "open question" as to Kesner's potentially criminal conduct, and that Jowder might have knowledge as to Kesner. What had occurred as to the potential conflict, if anything, was not that Kesner had asserted his rights, but that Jowder claimed that her Fifth Amendment rights were implicated. The evidence thus does not support the suggestion that in April the government's view of Kesner had changed because of Kesner's assertion of rights.

7

And by April, Kesner was alerted to the possibility that the government viewed him as close to a target.

The further development, which Kesner downplays, is that by May or shortly thereafter, the government offered immunity and obtained testimony from Jowder. That Jowder was not targeted but instead offered immunity after assertion her Fifth Amendment rights undermines the supposed link between assertion of rights and government targeting. That Jowder—whose testimony the government previously had identified as potentially material to Kesner's alleged criminal conduct—testified further undermines the notion that there were no developments other than Kesner's assertion of rights.

Kesner seeks to have the court construe the October 2 e-mail as evidence of a "reaffirm[ation]" of the government's view that he was only a witness and to find that something changed when Kesner's counsel asked the Assistant United States Attorney to call him to discuss the e-mail. But the record simply does not support this claim. Instead, given that Kesner had previously asserted his rights and made clear he would not testify without an offer of immunity, the March subpoena had been withdrawn, the Assistant United States Attorney had subsequently secured an immunity offer for Jowder and procured her testimony, no October subpoena was actually served, and the Assistant United States Attorney delayed any response to Kesner's counsel's calls and emails, the record suggests instead that the e-mail was simply a place-holder as the government made a final decision as to whether Kesner's testimony was needed to indict Gibson. If needed, the record suggests that Kesner would have been offered immunity to testify and the prosecutor would then have served the subpoena and offered immunity. If not needed, there was no reason to defer prosecuting Kesner. In either event, Kesner's assertion of rights was of no moment.

Based on this record, Kesner has failed to provide even "some objective evidence tending to show the existence of prosecutorial vindictiveness," Bucci, 582 F.3d at 113 (internal quotation marks omitted), let alone that "there is [a] sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness," United States v. Marrapese, 826 F.2d 145, 147 (1st Cir. 1987) (internal quotation marks omitted). There is no shifting of the burden to the government, and the court need not consider whether the government has rebutted the presumption and does not reach this portion of the Report and Recommendation.

V. Conclusion

For the foregoing reasons, the Motion by Defendant Mark Kesner to Strike Material in Support of Government's Response to Objection to Report and Recommendation [#121] is ALLOWED, and the Declaration of Cynthia A. Young [#119-1] is stricken. For the reasons set forth above and in the Report and Recommendation, the Report and Recommendation [#112] is adopted (except as to section II.c. that the court did not reach), and the Motion by Mark Kesner to Dismiss Indictment Based on Vindictive Prosecution or, in the Alternative, for Discovery and Evidentiary Hearing [#33] is DENIED.

IT IS SO ORDERED.

Date: March 21, 2017 /s/ Indira Talwani
United States District Judge